UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN F. MAUCK,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES J. MCKEE, et al.,<br><br>Defendants. | Case No.18-cv-04482-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 14 |

Before the Court is defendants County of Monterey, the County of Monterey Board of Supervisors ("Board"), and various county officials' motion to dismiss plaintiff Steven F. Mauck's first amended complaint alleging retaliation and fraud. *See* Dkt. No. 14. The Court finds that Mauck's constitutional claims against the Board and its individual members are barred by legislative immunity. In addition, Mauck's tort and contract claims are time-barred under California's Government Claims Act. Accordingly, the Court GRANTS Defendants' motion to dismiss with leave to amend.

**I. Background**

   **A. Allegations in the Complaint**

The Court assumes the factual allegations in Mauck's complaint are true solely for the purpose of deciding this motion.

Mauck began working for the County in 2004 as its "Risk Manager," heading the

County's statutorily-mandated Risk Management Division. FAC ¶¶ 2, 26–27. Until 2012, the Risk Management Division was under the purview of the County's Chief Administrative Officer ("CAO"). *Id.* ¶¶ 19, 26. Mauck's duties included administering and overseeing the County's self-insurance program, which handled claims relating to general liability and workers' compensation. *Id.* ¶¶ 25, 28. Mauck was also responsible for contracting with and supervising Third Party Administrators ("TPA") hired by the County to adjust, investigate, and settle claims against the County. *Id.* ¶ 28.

In 2011, the County conducted a job and wage study regarding Mauck's position. *Id.* ¶ 30. That study concluded that Mauck's position should be reclassified as Director of Risk Management, which would increase Mauck's pay grade, resulting in a pay raise from approximately $125,000 per year to $160,000 per year. *Id.* ¶¶ 30, 145. In late 2011, the County Counsel, defendant Charles J. McKee, approached Mauck with a proposal to transfer the Risk Management Division to the Office of County Counsel ("OCC") and reclassify Mauck as the Director of Risk Management. *Id.* ¶¶ 20, 31. Mauck agreed to McKee's proposal. *Id.* ¶ 31.

In early March 2012, Mauck interviewed for a Director of Risk Management position with the County of Los Angeles with a base salary of $160,000 to $249,000 per year plus benefits. *Id.* ¶ 145. According to the recruiter, Mauck was the only "strong candidate" for the position. *Id.* Believing that McKee and the County would reclassify him as a Director, Mauck discontinued his pursuit of the Los Angeles County position. *Id.* ¶ 147.

On March 20, 2012, McKee presented a proposal to the Board that would transfer the Risk Management Division to the OCC. *Id.* ¶ 32. The proposal would also reclassify Mauck's position as the "Principal Risk and Benefits Analyst," instead of the "Director of Risk Management." *Id.* Under this proposal, Mauck's pay grade would not increase to "Director" level. *Id.* ¶¶ 32, 35. The Board approved McKee's proposal on April 10, 2012. *Id.* ¶¶ 32, 34.

From April 2012 to early 2016, Mauck pressed McKee and the County about

2

McKee's promise to promote him to Director of Risk Management. *Id.* ¶ 36. McKee continued to reassure Mauck that the promotion would eventually happen. *Id.*

At the same time, McKee changed the County's claims review process by requiring all insurance and litigation claims to be reviewed by OCC attorneys instead of Risk Management employees and the TPA. *Id.* ¶ 38. Under McKee's direction, the OCC also stopped complying with federal and state tax reporting requirements. *Id.* As a result, in March 2015, Mauck reported McKee's refusal to comply with federal and state reporting requirements to the County's Auditor-Controller. *Id.* ¶ 39. The Auditor-Controller retained an outside Certified Public Accounting ("CPA") firm to investigate the OCC in August 2015. *Id.*

On February 16, 2016, the CPA firm sent a draft report regarding its investigation to McKee for comment or correction. *Id.* ¶ 41. The report concluded that the County's claims review process failed to comply with County ordinances, the terms of County's TPA contract, and tax reporting requirements. *Id.* On February 24, 2016, Mauck was ordered to meet with McKee's chief assistant county counsel and senior deputy regarding the OCC's response to the CPA's draft report. *Id.* ¶ 42. Mauck was told to "get on the same page" with the OCC's response to the report. *Id.*

On April 15, 2016, the Auditor-Controller sent the CPA firm's final report to the Chairman of the Board, defendant Jane Parker. *Id.* ¶ 43. The OCC contacted Mauck on May 6, 2016, asking Mauck to "fight back" against the CPA's final report. *Id.* ¶ 44. On May 12, 2016, Mauck emailed McKee explaining that he agreed with the majority of the CPA's report. *Id.* On May 16, 2016, McKee demanded that Mauck change his position and retract his May 12, 2016 email. *Id.* ¶ 45. Mauck refused. *Id.*

Despite the CPA's report, over the next year, the OCC continued to misappropriate County funds, allow excessive billing for legal services by outside and in-house counsel, and violate best practices for claims processing. *See id.* ¶¶ 46–58.

On March 22, 2017, Mauck emailed the Auditor-Controller complaining about the OCC's claim handling practices, conflicts of interest within the OCC, and argued that the

3

Risk Management Division should be removed from the purview of the OCC. *Id.* ¶ 60. Mauck emailed the Auditor-Controller again on April 28, 2017, complaining that the OCC was still not properly handling claims and that McKee was pressuring him to sign off on claims settlements. *Id.* ¶ 61. On April 10, 2017, Mauck met with the County's District Attorney Office to report misconduct by the OCC and McKee including non-compliance with tax law, interference with TPA contracts, excessive legal billing, misappropriation of funds, and entering into non-standard contracts. *Id.* ¶¶ 62. Mauck delivered letters to each Board member—defendants Parker, Luis Alejo, John M. Phillips, Simon Salinas, and Mary Adams—detailing the issues he reported to the District Attorney. *Id.* ¶ 63.

On December 13, 2017, the Auditor-Controller submitted the CPA firm's report and recommendations to the Board. *Id.* ¶ 64. The Auditor-Controller explained that the long delay between the report's finalization and its presentation to the Board was due to the Auditor-Controller's unsuccessful attempts to reach an agreement with the OCC on how to proceed and its difficulty in getting the matter scheduled with the Board. *Id.* In its presentation, the Auditor-Controller recommended that the Board adopt corrective actions outlined in the report, which included separating the Risk Management Division from the OCC. *Id.*

The Board met again on January 23, 2018, regarding the CPA firm's report. *Id.* ¶ 65. At this meeting, the Board largely declined to adopt the recommendations made in the CPA report. *Id.* Instead, the Board decided to keep the Risk Management Division under the purview of the OCC and ordered the OCC to draft amendments to the County Code addressing the issues highlighted by the report. *Id.* On January 30, 2018, and February 13, 2018, the Board adopted resolutions submitted by the OCC that amended the County Code. *Id.* ¶ 71. These amendments broadened the scope of the OCC's risk management authority and eliminated Mauck's risk management position. *Id.*

At McKee's direction, on March 15, 2018, Mauck's duties were "reorganized" to include only supervision of the County's Safety Program and Ergonomics program, which takes less than 5% of Mauck's time. *Id.* ¶ 69.

4

Mauck filed government claims with the County and Board on January 30, 2018. *Id.* ¶ 73. Those claims were denied by the County Clerk on February 7, 2018, and February 8, 2018. *Id.* Mauck also filed discrimination and harassment claims with California's Department of Fair Employment and Housing ("DFEH") under the Fair Employment and Housing Act ("FEHA"), Cal.Gov. Code § 12900 et seq., on July 23, 2018. DFEH closed Mauck's case and issued a "Right to Sue" letter on July 23, 2018. *Id.* ¶ 74.

### B. Procedural Background

On August 24, 2018, Mauck filed his first amended complaint alleging (1) violation of his First Amendment rights pursuant to 42 U.S.C. § 1983; (2) violation of his Fourteenth Amendment Due Process rights pursuant to 42 U.S.C. § 1983; (3) unlawful retaliation under Cal. Lab. Code § 1102.5; (4) age discrimination under Cal. Gov. Code §§ 12940(a), 12941; (5) hostile work environment and age-related harassment under Cal. Gov. Code § 12940(j); (6) intentional misrepresentation; (7) promise without intent to perform; and (8) unpaid salary and retirement benefits. *See* Dkt. No. 9. Defendants moved to dismiss Mauck's amended complaint on September 13, 2018. *See* Dkt. No. 14. The motion is now fully briefed and the Court held a hearing on the motion on October 24, 2018. *See* Dkt. Nos. 17, 18, 26. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 4, 16.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as

5

true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

**III. Discussion**

**A. First and Fourteenth Amendment Claims**

Mauck's first and second claims allege constitutional violations pursuant to 42 U.S.C. § 1983. Defendants contend that these claims must be dismissed as to the Board Defendants.[1] Specifically, Defendants argue that the Board Defendants cannot be sued in their individual capacity because the only allegations in Mauck's first amended complaint relating to the Board Defendants are (1) their January 23, 2018, order; (2) the January 30, 2018, resolutions; and (3) the February 13, 2018, resolutions. *See* FAC ¶¶ 65, 71. Defendants contend that these allegations relate to legislative acts and the Board Defendants have absolute immunity for legislative acts. Defendants also argue that Mauck's claims against the Board Defendants in their official capacity are duplicative of his claims against the County. The Court considers each argument separately.

**1. Whether Board Defendants Have Legislative Immunity**

"[L]egislators are absolutely immune from liability under § 1983 for their legislative acts." *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003). The Ninth Circuit applies a four-factor test to determine whether an act is legislative: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally

---

[1] The Board Defendants are the County of Monterey Board of Supervisors, Luis Alejo, John M. Phillips, Simon Salinas, Jane Parker, and Mary Adams. *See* FAC ¶ 16.

6

legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Id.* at 1220 (internal quotation marks omitted). "The first two factors are largely related, as are the last two factors, and they are not mutually exclusive." *Cmty. House v. City of Boise*, 623 F.3d 945, 960 (citing *Kaahumanu*, 315 F.3d at 1220). In addition, "the inquiry into whether the officials' actions were legislative must be 'stripped of all considerations of intent and motive.'" *Id.* (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998)).

### a. Ad Hoc Decisionmaking or Formulation of Policy

A decision is ad hoc if it is "taken based on the circumstances of [a] particular case" and "does not effectuate policy or create a binding rule of conduct." *Kaahumanu*, 315 F.3d at 1220. It "is made with a particular end or purpose, as distinguished from a coordinated policy." *Cmty. House*, 623 F.3d at 961 (internal citations and quotation marks omitted).

In *Bogan,* the Supreme Court recognized that "the termination of a position . . . unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office." *Bogan*, 523 U.S. at 56. Thus, official acts that eliminate employment positions are "undoubtedly legislative." *Id.* Ninth Circuit law is in accord. "Budgetary decisions, such as a decision to eliminate an employment position, typically involve the formulation of policy." *Cmty. House*, 623 F.3d at 961 (citing *Bechard v. Rappold*, 287 F.3d 827, 830 (9th Cir. 2002)). "[D]ecisions directed toward specific individuals, such as a decision to indemnify a government employee, are normally considered to be ad hoc." *Id.* (citing *Trevino v. Gates*, 23 F.3d 1480, 1482 (9th Cir. 1994)).

Board Defendants' actions in this case were not ad hoc. The January 23, 2018, board meeting directed the OCC to conduct quintessentially policy-making actions: drafting amendments to the local Code. Similarly, the January 30 and February 13, 2018, resolutions involve the formulation of policy because those resolutions eliminated the risk management position entirely.

The fact that the targeted positions were held only by Mauck does not help him.

7

*Kaahumanu* and *Kuznich v. County of Santa Clara*, 689 F.2d 1345 (9th Cir. 1982) are instructive. In *Kuznich*, the Ninth Circuit held that the enactment of a county zoning ordinance was not ad hoc even though it had the practical effect of shutting down a plaintiff's adult businesses because the zoning ordinance was generally applicable. *Kuznich*, 689 F.2d at 1348. By contrast, the court held in *Kaahumanu* that a conditional use permit was ad hoc because granting or denying a use permit was required an individualized, case-by-case determination. *Kaahumanu*, 315 F.3d at 1221–22. Here, the Board Defendants' actions had the practical effect of eliminating Mauck's position. But the Board Defendants' actions were generally applicable and had broader policy implications, such as expanding the scope of the OCC and preventing future applicants from being employed as a "Risk Manager."

Mauck counters that the Board's actions had the singular goal of stripping him of all risk management job duties. He argues that the Board made these decisions in retaliation for his reporting of McKee and the OCC's misconduct and, as a result, were specifically directed against him. However, the Supreme Court specifically instructed in *Bogan* that the legislative act analysis must be "stripped of all considerations of intent and motive." *Bogan*, 523 U.S. at 55. Therefore, it is immaterial that the Board may have acted in retaliation for Mauck's reporting. Accordingly, this factor supports a finding that the Board Defendants' acts were legislative.

### b. Application to a Few Individuals or to the Public at Large

Legislative immunity is disfavored for acts that apply to a few individuals rather than the public at large. *Kaahumanu*, 315 F.3d at 1222. However, "[a]n act need not affect a city's entire population in order to be considered legislative. It is sufficient that the act affects a discrete group of people or places. *Cmty. House*, 623 F.3d at 960 (citing *Kaahumanu*, 315 F.3d at 1220).

This factor also supports a finding that the Board Defendants' acts were legislative. The Board Defendants' acts reached beyond Mauck; they affected every party involved in with the County's risk management procedures. For example, the FAC alleged that the

8

Board Defendants' February 13, 2018, resolution "[e]liminated a Risk Manager or Third-Party Administrator in the claims process." FAC ¶ 71(f)(3). The FAC also alleged that the County Counsel and the OCC was given increased duties and responsibilities regarding risk management. *Id.* ¶ 71(f)(1)–(2). These allegations demonstrate that the Board Defendants' acts "affects a discrete group of people." *Cmty. House*, 623 F.3d at 960. Put differently, these acts changed the way the County approaches risk management, which will impact more than just a few individuals. This factor supports a finding that the Board Defendants' acts were legislative.

### c. Whether the Act is Formally Legislative in Character

"The 'formally legislative character' of an act—i.e., the fact that a decision was made by voting or through an equivalent legislative procedure—'weighs in favor of legislative immunity, [but] it does not itself decide the issue.' *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1137 (9th Cir. 2012) (quoting *Kaahumanu*, 315 F.3d at 1223.) "The act of voting on and passing ordinances and resolutions pursuant to correct legislative procedures is 'formally and indisputably legislative.'" *Id.* (quoting *Cmty. House*, 623 F.3d at 960). Here, the FAC alleged that the Board Defendants conducted their acts at official board meetings and adopted resolutions at those meetings. *See* FAC ¶¶ 65, 71. Mauck does not allege that the Board Defendants skirted "correct legislative procedure." *Schmidt*, 693 F.3d at 1137. Accordingly, this factor supports a finding that the Board Defendants' acts were legislative in character.

### d. Hallmarks of Traditional Legislation

"The hallmarks of traditional legislation include the use of discretion, the making of policy that implicates budgetary priorities and the provision of services, and prospective implications that reach beyond the particular persons immediately impacted." *Id.*

In this case, all three hallmarks are present. First, Mauck's complaint contained no allegations suggesting that the Board Defendants' acts were not discretionary. *See id.* Second, the resolutions adopted by the Board Defendants also implicates the County's provision of services. In particular, the resolutions eliminated the Risk Manager position

9

(*see id.* ¶ 71(f)(1)), granted the OCC greater discretion to hire outside counsel where the cost was less than $100,000 (*see* FAC ¶ 71(f)(2)), and eliminated the TPA from the claims process (*see id.* ¶ 71(f)(3)). All three of these actions alter the manner which the County conducts risk management, which has the potential to affect the County's ability to handle claims. Finally, the Board Defendants' acts have "prospective implications that reach beyond" Mauck. *Schmidt*, 693 F.3d at 1137. Most obviously, the elimination of the risk manager position impacts not only Mauck, but all future applicants for the position as well. *See id.* at 1138 (citing *Bogan*, 523 U.S. at 56). Therefore, the Board Defendants' acts bore the hallmarks of traditional legislation and this factor also supports a finding that the Board Defendants' acts were legislative in character.

All four *Kaahumanu* factors support a finding that the Board Defendants' acts were legislative in character. Accordingly, the Board Defendants are entitled to legislative immunity and the Court GRANTS Defendants' motion to dismiss Mauck's first and second claim against the Board Defendants in their individual capacity.

### 2. Whether the First and Second Claims are Duplicative

Official-capacity suits under 42 U.S.C. § 1983 against government officials "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 426 U.S. 658, 690 n.55; *see also Fisher v. Kealoha*, 869 F. Supp. 2d 1203, 1215 (D. Haw. 2012). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against that entity . . . for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a result, courts have routinely dismissed suits against municipal officials sued in their official capacity as duplicative when the municipal entity itself is also being sued. *See Fisher*, 869 F. Supp. 2d at 1215; *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996).

Here, Mauck is also suing the County for the same First and Fourteenth Amendment violations under § 1983. Thus, his claims against the Board Defendants in their official capacity are duplicative. Accordingly, the Court GRANTS Defendants'

motion to dismiss Mauck's first and second claim against the Board Defendants in their official capacity.

### B. Tort and Contract Claims

#### 1. Whether the Government Claims Act Bars Mauck's Tort Claims

California's Government Claims Act ("GCA") requires plaintiffs to "present[] . . . all claims for money or damages against local public entities" before filing suit. Cal. Gov. Code § 905. California courts have interpreted the GCA broadly, applying it to claims for personal injury, property damage, and contract. *See City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 738 (2007). The GCA also applies to claims "against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee . . . ." Cal. Gov. Code § 950.2. Depending on the type of claim, a plaintiff must present his claim to the local public entity "not later than six months after the accrual of the cause of action [or] not later than one year after the accrual of the cause of action." Cal. Gov. Code § 911.2.

Mauck's sixth and seventh claims were based on McKee's allegedly fraudulent representations made between April 10, 2012 through February 2016. *See* FAC ¶¶ 153, 171. Mauck alleged that he did not discover the falsity of McKee's representations until September 2016 at the latest. *See id.* However, Mauck did not present his sixth and seventh claims to the County Clerk until January 30, 2018. *See* FAC ¶ 73. By his own allegations, Mauck plainly failed to timely present his government claims regardless whether the six month or one year limitations period applies.

Mauck argues that the GCA does not apply because his sixth and seventh claims are asserted against McKee in his individual capacity. *See* Dkt. No. 17 at 16. However, whether Mauck asserts his claim against McKee in his individual or official capacity is irrelevant; the GCA covers all claims "resulting from an act or omission in the scope of McKee's employment as a public employee." Cal. Gov. Code § 950.2. An individual acts within the scope of his employment if "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the

loss resulting from it among other costs of the employer's business." *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 209 (1991) (quoting *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968 (1986)). "Tortious conduct that violates an employee's official duties or disregards an employer's express orders may nonetheless be within the scope of employment." *Id.*

Here, McKee's actions are well within his scope of employment. In related contexts, California courts have recognized that hiring, firing, demotion or failure to promote are employment actions. *See Jones v. Dep't of Corrs. & Rehab.*, 152 Cal. App. 4th 1367, 1381 (2007) (discussing employment actions in the context of employment discrimination claims). McKee's promise to "take care of [the pay raise]" and "talk[] to Human Resources" about Mauck's promotion to Director are classic employment actions well within McKee's scope of employment as County Counsel and Mauck's superior. FAC ¶ 36.

Because Mauck failed to timely present his tort claims to the County in accordance with the GCA, the Court GRANTS Defendants' motion to dismiss Mauck's sixth and seventh claims against McKee.

### 2. Whether the Government Claims Act Bars Mauck's Unpaid Wages and Retirement Benefits Claim

Defendants argue that Mauck's eighth claim is a breach of oral contract claim based on McKee's promise to promote him to Director and give him a corresponding pay raise. *See* Dkt. No. 14 at 8. Thus, Defendants reason that Mauck's eighth claim is time-barred along with his sixth and seventh claims. Mauck does not challenge Defendants' characterization of his eighth claim as a breach of oral contract claim. *See* Dkt. No. 17 at 17. Rather, Mauck argues that the GCA does not apply because his unpaid wages/breach of oral contract claim is specifically exempted from the GCA.

California Government Code § 905(c) exempts "[c]laims by public employees for fees, salaries, wages, mileage, or other expenses or allowances" from the GCA's claim presentation requirements. Similarly, § 905(f) exempts "[a]pplications or claims for

12

money or benefits under any public retirement or pension system." *Loehr v. Ventura County Community College District*, 147 Cal. App. 3d 1071 (1983) is instructive.

In *Loehr*, a plaintiff sued the Ventura County Community College District for wrongful termination of his employment contract three years before its expiration. *Id.* at 1077. The plaintiff's claims, including a claim for breach of contract, were dismissed for failure to comply with the GCA's reporting requirements. *Id.* at 1078. After concluding that the GCA applied to contract claims generally, the Court of Appeal recognized that California courts have narrowly construed the exemptions in §§ 905(c) and (f) to apply only to "salaries and wages [and benefits] which have been earned but not paid." *Id.* at 1080. Because the plaintiff's breach of contract claim sought "to obtain monetary damages for defendants' alleged misconduct in preventing him from rendering services through which he might have acquired a vested right to additional amounts in salary and benefits[,]" the court concluded that the exemptions did not apply. *Id.* at 1081.

Here, Mauck's eighth claim for unpaid wages is premised on a theory that Defendants owed him additional wages because they promised to promote him to Director of Risk Management. *See* FAC ¶ 180. In reliance on this promise, Mauck performed duties equivalent to that of a Director and "earned" those wages. *Id.* Thus, according to Mauck, he is entitled to the difference between the minimum salary of $160,000 for Director-level positions and the $125,000 salary that he was actually paid. *See id.* ¶ 192. Assuming, *arguendo*, that Defendants' promise to promote him is enforceable, the §§ 905(c) and (f) exemptions only apply if Mauck "earned" the difference in salary. On the other hand, if the $35,000 difference in annual salary was not earned by Mauck, the §§ 905(c) and (f) exemptions do not apply and Mauck's eighth claim is time-barred.

Mauck has not alleged facts showing that he earned the difference between the minimum salary of $160,000 and his actual salary of $125,000. In the context of overtime pay, the California Supreme Court stated that "[a] public employee is entitled only to such compensation as is expressly and specifically provided by law." *Longshore v. Cnty. of Ventura*, 25 Cal. 3d 14, 22–23 (1979) (citing *Van Riessen v. City of Santa Monica*, 63 Cal.

13

App. 3d 193, 199–201 (1976)). "The statutory compensation rights of public employees are strictly limited and cannot be altered or enlarged by conflicting agreements between the public agency and its employee." *Id.* at 23 (citing *Miller v. State of California*, 18 Cal. 3d 808, 814 (1977)).

In his first amended complaint and opposition, Mauck points to no law "expressly and specifically provid[ing]" that he was entitled to the Director position or that he was owed a salary of $160,000. Indeed, it is not clear how he could do so. The crux of Mauck's sixth through eighth claims is that the County and McKee promised to create a Director of Risk Management position with an appropriate salary, but failed to do so. Mauck cannot recover wages for a non-existent position.

The only fact Mauck alleges in support of his claim that he "earned" a $160,000 salary is the 2011 job and wage study, which concluded that Mauck's position "should be reclassified as Director, Risk Management." FAC ¶ 30. But the County did not act on that study (*see id.*) and Mauck offers no authority for the proposition that an unadopted job and wage study recommending that a county create a position is sufficient to "expressly and specifically provide" increased compensation to an employee. *Longshore*, 25 Cal. 3d at 23. Nor did Mauck allege that he gained increased responsibilities any time during his employment with the County. On the contrary, Mauck's first amended complaint suggests that the scope of his duties was well established when he was hired as the "Principle Risk and Benefits Analyst" in 2004. *See* FAC ¶ 28.

Rather, Mauck's claim is more accurately characterized as a claim for damages arising from Defendants' breach of contract. *Cf. Loehr*, 147 Cal. App. 3d at 1080–81 (claim arising from alleged breach of contract preventing a public employee from "rendering services through which he might have acquired a vested right to additional amounts in salary or benefits" are not exempted). Because the §§ 905(c) and (f) exemptions do not apply, Mauck's eighth claim is time-barred. Accordingly, the Court GRANTS Defendants' motion to dismiss Mauck's eighth claim.

14

## IV. Conclusion

The Court GRANTS Defendants' motion to dismiss with leave to amend. Accordingly, Mauck's first and second claim against defendants County of Monterey Board of Supervisors, Luis Alejo, John M. Phillips, Simon Salinas, Jane Parker, and Mary Adams is dismissed with leave to amend. Mauck's sixth and seventh claims against McKee is dismissed with leave to amend. And Mauck's eighth claim against the County is also dismissed with leave to amend.

Mauck's amended complaint, if any, must be filed within 14 days of this order. The amended complaint may not add any claims or parties without leave of the Court.

**IT IS SO ORDERED.**

Dated: November 9, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge